RENDERED: MARCH 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1371-MR

CRISTINA ARCE                                                                          APPELLANT

v.      APPEAL FROM HARDIN CIRCUIT COURT
        HONORABLE M. BRENT HALL, JUDGE
        ACTION NO. 06-CI-00182

JAVIER ARCE, M.D.                                                                          APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND MCNEILL, JUDGES.

KRAMER, JUDGE: Cristina Arce appeals the Hardin Family Court's dismissal of an enforcement action she asserted against her former husband, Javier Arce, associated with the dissolution of their marriage. Upon review, we vacate and remand.

Divorce proceedings began between Javier and Cristina in Hardin Family Court on or about February 2, 2006. The proceedings lasted approximately two years, culminating in the dissolution of the marriage and, pertinent to this appeal, two orders (*i.e.*, an order of June 25, 2008; and an agreed order of October 7, 2008) dividing their substantial assets. On June 18, 2019, Cristina filed a motion with the family court, along with an accompanying affidavit, asking the family court to enforce its orders of June 25, 2008, and October 7, 2008. Specifically, she set forth the following requests for relief:

> 1. To require the Petitioner, Javier J. Arce, to pay Respondent, Cristina Mier Arce, certain sums of money that are owed to her as part of the parties' divorce proceedings, specifically:
>
> > a. To award Respondent ½ of the funds removed by Petitioner, totaling $59,000, from the Fidelity Investment Account . . . prior to the division of the account funds between the parties, namely $29,500;
> >
> > b. To require Petitioner to comply with this Court's order entered on or about 10/9/2008 awarding Respondent the sum of $82,815.50 to equalize the division of property and $2,500 representing Respondent's interest in property received by Petitioner's mother; and
> >
> > c. To award Respondent the appreciation of the value of the amounts due to growth of the stock market and inflation; or in the alternative, to award Respondent interest on the sums due her from the date obligations

were due at a rate of 12% per annum compounded annually.

2. To award Respondent 5% of the real estate rental income for the years 2009-2018 in the approximate sum of $25,887.45.

3. To award Respondent ½ of any rent monies received from the marital properties for the years 2006, 2007, and 2008, giving Petitioner credit for any real estate taxes paid.

4. To require Petitioner to reimburse Respondent the sum of $32,770.31 representing the amount owed to Respondent from the sale of the real estate located at 6613 SW 81 Terrace, Gainesville, Florida.

5. To order Petitioner to reimburse Respondent the sum of $26,000 for attorney/consultant fees paid by Respondent to Carl Christianson, Eugene Mosely, and Phyllis Lonneman.

6. To require Petitioner to reimburse Respondent the sum of $2,621.50 representing ½ of the funds expended on Mariana's[1] car insurance.

On August 7, 2019, Javier filed a response to Cristina's motion and moved to dismiss. In full, his response and motion stated:

Comes the Petitioner, by Counsel, and moves the Court to dismiss this action and to direct the parties to proceed in regular Circuit Court.

In support of said Motion, counsel states that these parties were divorced by Decree of Dissolution dated June 25th, 2008. In that decree, the Court ordered that certain properties were to be sold and certain moneys

---

[1] Mariana is one of the parties' children.

-3-

were to be divided. In the ten plus years since the entry of the Decree the parties have continued to operate as a partnership co-mingling money and buying additional properties. Because the parties are not married, their actions since the divorce would constitute a partnership and is not a continuation of the divorce case. This action should be heard in the regular Circuit Court division of the Hardin Circuit Court and not Family Court.

The family court considered Javier's motion at a hearing on August 13, 2019. The hearing lasted approximately seven minutes, primarily consisting of arguments from the parties' respective counsel. The relevant substance of the hearing was as follows:

> JAVIER'S COUNSEL: I just wanted to get on the record, I think this is the improper court, uh, to hear this dispute, uh, because these people have been divorced going on ten years. We're talking about properties they have purchased together since the divorce. Um, there's—
>
> COURT: That's a general partnership.
>
> JAVIER'S COUNSEL: It's a partnership. That's, that's my point is that this is a general partnership dissolution matter, not a divorce matter. Um, so, I just. I, I don't, I mean, I like being in front of you, but I just, uh—
>
> COURT: [Inaudible]
>
> JAVIER'S COUNSEL: Since I'm here right now. [Laughter]
>
> COURT: [Laughter] Yeah, heck yeah.

-4-

JAVIER'S COUNSEL: But I just, I don't think this is the proper jurisdiction to, to hear this. Now, there was one issue involved—

COURT: Now, this is property and monies that had been generated in the last decade that weren't—

JAVIER'S COUNSEL: Now, *some of the property* was owned by them during the divorce, and what they did following the divorce, they just continued to own them jointly, and they've had accounts jointly. And they have, over the past ten years, made money, spent money from those properties. And, so, you had ordered them sold on most properties, uh, but they chose a different path after they were here in front of you. Uh, they did it jointly and together, and so I think it constitutes a partnership.

CRISTINA'S COUNSEL: Your order, on October the ninth, 2008, which was an agreed order that you signed, said the parties could jointly own the real estate properties, and they, she, my client, could manage the properties collecting rent and paying bills and debts associated with the properties. They could be sold by any, at any time by agreement of the parties, or they could continue on. They had to agree on something and they never did. There was, and they did not commingle, they kept their money separate, so it's our position this is a post-judgment, basically, to go ahead and divide accounts. The, uh, they've got property that's listed for sale now. They have trouble agreeing on the amounts listed for. This is set for a hearing on the twelfth of September.

COURT: Right.

JAVIER'S COUNSEL: Which is why I brought the motion today.

CRISTINA'S COUNSEL: There has been three years now, more than that, actually, that they've had the

opportunity to bring up this partnership stuff and they've only brought it up at this time.

. . .

JAVIER'S COUNSEL: The bottom line is that they still have property that they have bought together since the divorce. That's *part of* the property.

CRISTINA'S COUNSEL: They've kept separate.

JAVIER'S COUNSEL: How was it kept separate?

COURT: What do you mean, kept separate?

CRISTINA'S COUNSEL: The accounts were kept separate.

JAVIER'S COUNSEL: Well, they're both on the accounts.

CRISTINA'S COUNSEL: Uh, that's not my understanding. There was [sic] two bank accounts.

JAVIER'S COUNSEL: Okay. It's still a partnership, I think.

JAVIER: No, both, both accounts are in both names.

JAVIER'S COUNSEL: Yeah, that's what I'm saying.

COURT: Both accounts in both names?

JAVIER: Right.

COURT: Okay. Well then, it's a partnership.

JAVIER'S COUNSEL: Yeah.

CRISTINA'S COUNSEL:  I thought you said separate accounts?

CRISTINA:  They, we both are on the same accounts, but those accounts, we've always had it, in the divorce.

COURT:  This, since you're divorced, you can co-own property, but you co-own it as partners, not as husband and wife.  It's a general partnership at that point.  I mean, it's just as if, and any property you bought after the marriage is a general partnership that you all have.  It's not, unless you've done a dual sole proprietorship with a—

JAVIER'S COUNSEL:  No, they haven't.

COURT:  —with a venture agreement, you know, that's—

CRISTINA'S COUNSEL:  But needless to say, why are we waiting three weeks before our hearing—

JAVIER'S COUNSEL:  Well, I'll tell you why.  I'll tell you why.  Because the other attorney that was involved, he quit.  Everything stopped.  I mean, everything stopped.  We didn't do anything on this case for over a year.  So I thought maybe they'd just gone home.  And uh, so, when I—

CRISTINA'S COUNSEL:  We've been going back and forth.

JAVIER'S COUNSEL:  Well, I know we have.  We were trying to get property sold, but that's—

COURT:  Well, I hope you can get it sold because, you know, because it sounds like everybody's got more important things to do than deal with property.  This is a general partnership at this point.  Because when you're no longer husband and wife, you become general partners

on all property ownership unless you've done a corporation or an LLC or something like that. If you haven't, then you don't have, I'm trying to think of that, a joint venture agreement. Unless you got a joint venture agreement between two other entities, which evidently you don't, it's a general partnership. It's, it's just as if you were never married on the property that you bought after the divorce. And Judge Howard and Judge Easton deal with that all the time. Judge Howard's first case out of the gate was a commingling of assets between people that were living together and were never married. It's a general partnership. Uh.

JAVIER'S COUNSEL: I remember that case.

COURT: Yeah. So, it's, it's a general partnership.

JAVIER'S COUNSEL: Okay. Thank you.

COURT: You need to go to regular circuit court and we'll remand the September hearing date.

(Emphasis supplied.)

On August 27, 2019, the family court then granted Javier's motion to dismiss. The entirety of its order was as follows:

This matter having come before the Court on Petitioner's Motion and the Court being duly advised;

IT IS HEREBY ORDERED AND ADJUDGED that the current matter before the Court is hereby dismissed and the parties are directed to address these issues in Hardin Circuit Court.

Cristina now appeals, and her arguments are two-fold. First, she contends the family court erroneously determined it lacked "subject matter

-8-

jurisdiction" to resolve her motion to enforce its judgment. Second, Cristina argues that because she merely sought to enforce the family court's prior orders relating to the property distribution terms of her divorce decree with Javier, the family court likewise retained "particular case" jurisdiction to resolve her motion.

Javier, on the other hand, believes the family court achieved the proper result. He argues in his brief that during the several years between the date of the family court's most recent order (*i.e.*, October 7, 2008) and the date of Cristina's motion (*i.e.*, June 18, 2019), he and Cristina "modified their agreed order when they jointly created and carried out a joint venture from 2009 to present," and that their "modification removed this class of case from domestic law into a new class of case where the family court has no jurisdiction." In support of his position, he cites as evidence roughly thirty pages of documents which he failed to produce below but appended to his appellate brief. Because these documents are not in the record below, we have not considered them or any arguments in Javier's brief regarding them. They are not properly before this Court. *See Barnard v. Stone*, 933 S.W.2d 394, 396 (Ky. 1996) (explaining a court of review cannot consider evidence that was not adduced below).

With that said, we begin with Cristina's argument that the family court erroneously determined it lacked "subject matter jurisdiction." We disagree that this is a proper or complete interpretation of what occurred below. Subject

matter jurisdiction involves a court's authority to resolve the *kind* of case identified by the litigants. *See Gordon v. NKC Hospitals, Inc.*, 887 S.W.2d 360, 362 (Ky. 1994). There is no question that the Hardin Family Court had the authority to resolve the *kind* of case implicated in Cristina's motion – namely, one involving what Cristina characterized as the equitable distribution of property stemming from the dissolution of her marriage with Javier. *See* KRS[2] 23A.100(1)(e).[3]

Moreover, to the extent that Cristina merely sought to enforce the property distribution terms of her divorce decree with Javier, the family court retained particular case jurisdiction to resolve her motion.[4] This is because the terms of a separation agreement incorporated into a divorce decree are enforceable by all the remedies available for the enforcement of a judgment. KRS 403.180(5). And, the family court had continuing jurisdiction to enforce the terms of its judgments or decrees. *Penrod v. Penrod*, 489 S.W.2d 524 (Ky. 1972).

---

[2] Kentucky Revised Statute.

[3] KRS 23A.100(1)(e) provides, "As a division of Circuit Court with general jurisdiction pursuant to Section 112(6) of the Constitution of Kentucky, a family court division of Circuit Court shall retain jurisdiction in the following cases: . . . (e) Equitable distribution of property in dissolution cases[.]"

[4] In general, "particular-case jurisdiction" is the right, authority, and power of a tribunal to hear and determine a specific case within that class of cases over which a court has subject matter jurisdiction. *See, e.g., T.C. v. M.E.*, 603 S.W.3d 663, 681 (Ky. App. 2020) ("Particular case jurisdiction generally requires the existence of specific so-called 'jurisdictional facts' . . . defined as [a] fact that must exist for a court to properly exercise its jurisdiction over a case, party, or thing." (internal quotation marks and citation omitted)).

That aside, the issue presented in this matter does not involve the family court's subject matter jurisdiction.  Nor, for that matter, does it involve whether the family court generally retains continuing jurisdiction to enforce its judgments.  The dispositive issue the family court adjudicated – and the sole issue Javier raised in his motion to dismiss – was whether a change of circumstances (*i.e.*, a post-divorce business partnership between Javier and Cristina) *discontinued* their divorce case.  And, considering both the substance of his motion and what his counsel argued at the August 13, 2019 hearing, Javier's argument regarding his purported change in circumstances with Cristina could objectively be taken at least three different ways, namely due to changed circumstances:  (1) the specific relief Cristina sought through enforcing the 2008 orders was outside the scope of those orders; (2) the 2008 orders had become moot and therefore unenforceable;[5] or (3) due to laches, waiver, or estoppel, it was no longer equitable to enforce the 2008 orders.

In any event, however, there are problems with all of these premises.  First, there is a reason why we have omitted any analysis of the family court's 2008 orders from this opinion:  Any such analysis would be a fruitless endeavor

---

[5] *See, e.g.*, *Medical Vision Group, P.S.C. v. Philpot*, 261 S.W.3d 485, 491 (Ky. 2008) (explaining courts are required to dismiss "when a change in circumstance renders that court unable to grant meaningful relief to either party.")

because we can only guess that Javier's argument related to the *scope* of the family court's 2008 orders. Neither Javier nor the family court addressed any aspect of those orders or even the specifics of Cristina's enforcement motion.

Second, assuming the family court believed that the existence of a partnership between Javier and Cristina rendered its 2008 orders *moot* or that it was no longer *equitable* to enforce those orders, evidence was required to justify those conclusions.[6] Here, no such evidence was adduced. There are only the brief, unclear, and unsworn statements Javier and Cristina provided during the seven-minute hearing, set forth above; the arguments of counsel indicating, as emphasized, that "part of" or "some of the property" relative to the parties' divorce decree may have been affected by the parties' post-divorce conduct;[7] and the thirty or so pages of purported partnership documents that Javier has appended to his appellate brief – documents we cannot consider because Javier failed to produce those documents below. *Barnard*, 933 S.W.2d at 396.

---

[6] As to how a partnership is proven, KRS 362.175 defines a partnership as "an association of two (2) or more persons to carry on as co-owners a business for profit." *See also Denison v. McCann*, 303 Ky. 195, 197 S.W.2d 248, 249 (1946) (discussing elements of laches); *Greathouse v. Shreve*, 891 S.W.2d 387, 390 (Ky. 1995) (discussing waiver); *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 62 (Ky. 2010) (discussing equitable estoppel).

[7] *See Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) ("[T]he arguments of counsel are not evidence[.]").

It is not the prerogative of this Court to make arguments or otherwise practice a case for the litigants. It is not our prerogative to affirm an unsupported judgment. We are also not inclined to guess at the basis of the family court's judgment; in that vein,

> [w]e remind the [family] court that it speaks only through written orders entered upon the official record. *See Midland Guardian Acceptance Corp. of Cincinnati, Ohio v. Britt*, 439 S.W.2d 313 (Ky. 1968); *Com. v. Wilson*, 280 Ky. 61, 132 S.W.2d 522 (1939). Thus, any findings of fact and conclusions of law made orally by the [family] court at an evidentiary hearing cannot be considered by this Court on appeal unless specifically incorporated into a written and properly entered order.

*Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010).

Accordingly, we express no opinion regarding the merits of this appeal as there is no basis for us to decide the matter. Instead, we VACATE and REMAND for proceedings not inconsistent with this opinion.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Lyn Taylor Long | Barry Birdwhistell |
| Elizabethtown, Kentucky | Elizabethtown, Kentucky |